## Case No. 9,678.

### MIZNER et al. v. VAUGHN. LAMB v. SAME. SQUIRES v. SAME.

[2 Sawy. 269; [1] 17 Int. Rev. Rec. 10.]

Circuit Court, D. Oregon. Nov. 18, 1872.

GRANTS—OREGON DONATION ACT—SETTLEMENT— CHILDREN OF SETTLER—DEATH BEFORE PATENT ISSUED—LIMITATION.

1. A settler on the public lands under the donation act (9 Stat. 477), had a present grant by force and operation of such act from the date of his settlement, unless such settlement preceded in point of time the passage of the act, in which case the grant took effect from the date thereof, and not before.

[Cited in Wythe v. Haskell, Case No. 18,118; Bear v. Luse, Id. 1,179.]

2. Where a settler under section 4 of said act dies intestate, after complying with the act, and before the issue of patent, his estate in the land terminates, and the remainder at once vests in his children, by purchase as the donees of the United States, and not by descent as the heirs of such settler.

3. A settler under said act is seized, at the date of his settlement, of a conditional fee in the land settled upon, and thereafter his right to the possession is not barred by lapse of time, unless it appears that the party claiming the benefit of such bar, either by himself or in connection with others with whom he is in privity, has actually occupied the premises adversely to the title of such settler, continuously for the period of twenty years subsequent to such seizin.

4. The title of such settler does not take effect by relation, prior to the passage of the donation act.

On September 26, 1870, the plaintiff [Lansing B.] Mizner commenced separate actions to recover possession of an undivided three fifths of lots two and eight in block fifteen, lots one and three in block five, and the south one half of lot four in block two, in the city of Portland, against thirteen persons then in the actual occupation of certain parts and parcels of said lots and half lot respectively. The occupants having answered that they were in possession only as the tenants of the defendant [George W.] Vaughn, on application of said Vaughn, an order was made admitting him to defend said action in place of said tenants, and that the same be consolidated. On May 17, 1872, the defendant answered as follows: (1) Denying that the plaintiff had any legal estate in the premises, or right to the possession thereof. (2) That the action was barred by the statute of limitations, because neither the plaintiff, nor those under whom he claims, were seized or possessed of the premises in controversy within twenty years before the commencement of this action. (3) The pendency of a suit and cross-suit in equity in this court, between the defendant and the grantors of the plaintiff concerning a partition and the right and title to the same property. On motion of plaintiff, the third defense was stricken out as being irrelevant and immaterial, and because, if a defense

1 [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

at all, being matter in abatement of the action, it could not be joined with a plea to the action, it could not be joined with a plea to the merits. Afterwards, the plaintiff replied to the plea of the statute of limitations, and in pursuance of the stipulation of the parties, the cause was tried by the court without a jury, on June 12. On the same date, the plaintiffs—Lamb and Squires— commenced separate actions against the same persons to recover the possession of an undivided one tenth each of the same premises. In these actions, Vaughn was also admitted to defend, and the same issues were made as in the action brought by Mizner, and by stipulation of the parties the three were tried together. On the trial it was agreed that either party might use as evidence, if otherwise competent, any pleading, exhibit or deposition in the suit and cross-suit in equity—decided March 28, 1872, in this court concerning the same property, entitled Lamb v. Vaughn [Case No. 8,023].

W. Lair Hill and E. C. Bronaugh, for plaintiffs.

Erasmus D. Shattuck and Theodore Burmester, for defendant.

DEADY, District Judge. Practically, it is admitted that the plaintiffs have the legal title to the premises, and are entitled to recover the possession of them, unless their right to maintain these actions is barred by the statute of limitations. The evidence establishes the following facts: On September 22, 1848, Francis W. Pettygrove abandoned the land claim embracing the lots in controversy, and Daniel H. Lownsdale settled thereon, and after the passage of the donation act of September 27, 1850, namely on March 11, 1852, he made his notification of such settlement in the proper land office, and otherwise complied with the provisions of said act, and died intestate thereon, and before the issue of the patent, on May 4, 1862, leaving children, Mary E. Cooper, James P. O., and Millard O. Lownsdale and Ruth A. Semple, and children of his deceased daughter Sarah, the plaintiffs Lamb and Squires.

The patent certificate showing compliance by Daniel H. with the conditions of residence and cultivation required by the donation act issued to the deceased on October 17, 1860, and the patent on June 6, 1865. Prior to the settlement of Daniel H., the land claim described in the patent was occupied by F. W. Pettygrove and Benjamin Stark, who held the bare possession under the laws of the provisional government, but without any claim of right to, or interest in, the soil, which then belonged to the United States.

During this occupancy said Pettygrove and Stark sold and quitclaimed the lots in controversy, except lot 2 in block 15, and south ½ of lot 4 in block 2, as follows: Lots 1

and 2 in block 5 to Thomas Stephens, on March 8, 1849; lot 3 in block 5 to Albert E. Wilson, on March 8, 1849; lot 8 in block 15 to Hugh D. O'Bryant, on March 13, 1847.

A deed was offered in evidence, but rejected for want of proof from one Geer to Atwood for lot 2 in block 15, dated January 25, 1846, and a witness testifies that Geer purchased of Pettygrove; and that he purchased of Atwood, and was in possession in September, 1848, and March, 1849; but there is no evidence to connect the defendant Vaughn with either the alleged purchase from Pettygrove, or deed to Atwood.

Vaughn testifies that he purchased south ½ of lot 4 in block 2, in 1855, of James Anderson, and that he had improved it in 1861, and occupied it since the purchase. He also states that before purchasing he conversed with Daniel H., who told him that the lot was in the Pettygrove title or tract, which consisted of 15 or 16 blocks that Pettygrove had laid off into town lots during his occupation of the land, and that he had given a bond to make title when he got one from the United States.

Lot 1 in block 5 is the only part of the premises to which the defendant proves a paper title back to Pettygrove, but when, if ever, he entered into actual possession of it does not appear; neither does it appear whether his immediate grantor, Thomas Stephens, was in possession at the time of the deed to him or not.

The law arising upon these facts is in the main well settled in this court, and need not be more than stated here. Daniel H. being in the occupancy of this land when the donation act passed, and having subsequently proven his compliance with the law, became the owner in fee of the premises from September 27, 1850, by virtue of the grant contained in section 4 of such donation act (9 Stat. 497), subject to the contingency that if he died before patent issued and intestate, his estate terminated, and the remainder should vest in his children in equal parts. Fields v. Squires [Case No. 4,776]; Lamb v. Starr [Id. 8,022].

This contingency actually happened, and on May 4, 1862, the four children of Daniel H. became the owners in fee of the premises, as the direct donees of the United States, and not as the heirs of their father. This being so, the plaintiff Mizner, and his grantors, Lownsdale, Cooper and Semple, at the commencement of this action, had been seized of the premises within twenty or even ten years, and therefore he is not barred from maintaining it for the possession. In other words, the cause of action did not arise until after the death of Daniel H. and the vesting of the remainder in his children.

But, from this construction of the act, it necessarily follows, that neither Lamb nor Squires took any interest in the remainder, the same being limited by the act to the children of Daniel H. They are not his children, but the children of his daughter, who died before him, and therefore before the remainder vested. Neither can they take an interest in such remainder as his heirs, because although the act limits the estate to the "children or heirs" of the deceased settler, it does not grant it to both children and heirs if these terms should include different persons, as in this case. The natural and most reasonable meaning of the phrase is, to the children first, and in default of those, to whoever may constitute the legal heirs of the deceased. Lamb v. Starr [Id. 8,021]. As to these plaintiffs, then, the finding of the court must be that they are not the legal owners of one fifth each of the premises, or any other portion thereof, and therefore judgment must be given against them; while the plaintiff Mizner is entitled to recover a three fourth interest instead of a three fifth.

But it is contended for the defendant that Daniel H. died seized of an estate of inheritance in the premises, which thereupon descended to his children as his heirs, and that, therefore, neither they nor their grantee, Mizner, can maintain this action, unless he could if living. If the premises are correct, the conclusion follows. Let it be assumed, then, for the present, that the children of Daniel H. took as his heirs and not as donees of the United States—or, in other words, that he died seized of an estate of inheritance, could he, if living, have maintained this action? Counsel for the defendant admit that he could, being the owner of the legal estate, unless he would be barred by the statute of limitations.

This question involves the inquiry, when did the title vest in Daniel H., and thereby give him a cause and right of action against an adverse occupant; and what is the nature and effect of the occupancy of the premises as shown on behalf of the defendant? It is the settled law of this court, until otherwise determined by a superior, that a settler under the donation act had a present grant by force and operation of such act from the date of his settlement, unless such settlement preceded in point of time the passage of the act, in which case the grant took effect from the date thereof, and not before. Fields v. Squires [Case No. 4,776]. This being so, Daniel H., if living, might have maintained this action, even admitting that the defendant by himself, or those with whom he is in privity of possession, had been in the continuous, open and adverse possession of the premises from the date of the grant by the United States to Daniel H., up to the commencement of this action, because he would have been seized at the date of such grant, which was within twenty years prior to the bringing of the action.

In Doswell v. De La Lanza, 20 How. (61 U. S.] 32, the defendants were in possession of the premises in controversy, without title,

prior to the seizin of the plaintiff, and the court said that "in regard to him, they cannot be considered as having ejected him by their entry, his legal title not having then accrued."

The defendant entered without title, and has never acquired any, and unless there has been a continuous adverse occupation of the premises for twenty years by him, or those with whom he is in privity, the plea of the statue of limitations cannot be upheld. It is urged, however, that for the purpose of preventing a recovery in this case, and protecting the defendant in his possession, the court ought to hold that the title of Daniel H. took effect by relation from the date of his settlement in 1848.

The insuperable objection to this proposition is, that the occupation of Daniel H. was not commenced under the act making the grant, and, prior to its passage, had no relation to it whatever. Fields v. Squires, supra. In Gibson v. Choteau, 13 Wall. [80 U. S.] 101, Mr. Justice Field, delivering the opinion of the court, says: "The doctrine of relation is a fiction of law adopted by the courts solely for the purpose of justice, and is only applied for the security and protection of persons who stand in some privity with the party that initiated proceedings for the land, and acquired the equitable claim or right to the title."

Now, if the defendant had entered under Daniel H., or claimed an interest in or right to the land, in pursuance of some contract made with the latter while he was in the occupation of the premises, there would be some propriety in holding that the grant to Daniel H. took effect by relation from the commencement of such occupation, if that were necessary to protect the defendant's rights under such entry or contract. But in the case at bar, the application of the fiction of relation would work an injustice rather than otherwise. The defense is simply an adverse possession for twenty years. There is no privity between the parties to this action. Vaughn and those under whom he claims are strangers to Daniel H. and his title. So far as he and his children are concerned, they are and always were mere intruders upon the premises.

As was said by the court, Sawyer, C. J., in the opinion in the equity suit above mentioned: "There is no direct contract relating to these lots, either verbal or written, upon any consideration moving between the parties, Lownsdale and complainant Vaughn, or any of the latter's grantors. * * * He (Lownsdale) never purchased the lots, and never had or claimed any interest in them, till he acquired an interest under the said donation act. It was, therefore, a matter of no concern to him what use was made of them by the parties in possession, before he himself acquired any rights therein, and he had no occasion to object to, or interfere with, the action of the possessor, or the claimants

under Pettygrove." [Lamb v. Vaughn, Case No. 8,023.]

But it is not admitted that Vaughn's possession has any of the elements necessary to make it a bar to this action, even if the grant to Daniel H. were held to take effect by relation from September 22, 1848, the date of his occupation.

In the first place, he is not shown to have any privity with any one that ever was upon or about the premises, either by deed or actual possession, except Stephens, as to lot one in block five. In that instance the evidence shows that Vaughn obtained a deed from Stephens, the grantee of Pettygrove and Stark, on September 26, 1856. But admitting that Stephens occupied the lot adversely to Daniel H. for some years after the grant to the latter, there is no evidence as to the character or even the fact of Vaughn's possession.

As to lot three in block five, there is no direct evidence that the defendant ever had possession of it, or that he is connected by deed with Pettygrove. A deed, dated September 24, 1858, for this lot, executed by Thomas Smith as guardian of his minor son, A. C. Smith, the grantee of Albert E. Wilson, aforesaid, to the defendant, was offered in evidence, but not admitted, for want of authority in the guardian to make the sale. So it is probable that the defendant's claim to this lot does not go back farther than that date.

Lot 8 in block 5 was attempted to be conveyed to defendant on February 17, 1857, by Gilbert and Rockwell, the successors in deed to Hugh O'Bryant, Pettygrove's grantee, by Pomeroy, as their attorney in fact; but no authority to Pomeroy being shown, the deed was not admitted. There is no testimony to show that the defendant ever actually occupied the lot, and his claim to it probably commenced at the date of this supposed deed from G. and R., and grew out of it.

Lot 2 in block 15 is not shown to have ever been claimed or occupied by the defendant, and there is no proof that he is the successor by deed or possession of Pettygrove or his grantees. The south ½ of lot 4 in block 2, on which there are valuable improvements, was purchased of Anderson in 1855, but how long prior thereto, and under whom or what circumstances he occupied it, does not appear. The defendant testifies that he has been in actual possession since the purchase from Anderson, but makes no proof that he is the successor by deed or possession of Pettygrove or his grantees.

As to the claim under which the defendant occupied the lot, it may reasonably be inferred from his deposition and the statements in his cross-bill aforesaid, that he regarded Daniel H. as the legal owner of the property, but expected to get a title from him in pursuance of a certain bond given by Daniel H. to Pettygrove upon the abandonment of the land claim by the latter; and it is probable

that all the other lots in controversy were claimed under the same circumstances and expectation.

Upon the evidence, then, there is no ground to maintain that Vaughn or any one with whom he is in privity either by deed or possession, taken separately or together, had occupied any of these premises in any manner continuously for twenty years before the commencement of this action, unless it be lot 1 in block 5, and in that case, admitting all that is claimed for the defendant, the possession of himself and predecessors could not be held adverse to the title of Daniel H. before it came to him from the United States by the passage of the donation act on September 27, 1850.

The defendant in the actions by Lamb and Squires is entitled to judgment that they take nothing by said actions and for costs; and the plaintiff, Mizner, is entitled to judgment for the possession of an undivided three fourths of the premises, and for costs.